IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KIM D. LAWRENCE, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 06-6233-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

KATHRYN TASSINARI
Drew L. Johnson, PC
1700 Valley River Drive
Eugene, OR 97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

VIKASH CHHAGAN
Acting Regional Chief Counsel
DAVID M. BLUME
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Kim Lawrence ("Lawrence") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons set forth below, I recommend the case be remanded for further proceedings.

## BACKGROUND

Born in 1961, Lawrence completed high school and three years of college. Tr. 56, 67.[2] Between 1990 and 2002, Lawrence worked as an auto parts purchasing agent, auto parts service department secretary, and auto body shop office manager. Tr. 62. Lawrence applied for DIB on October 22, 2003, alleging disability since October 17, 2002, due to a neck injury and related neck and back pain. Tr. 58, 61. Her application was denied initially and upon reconsideration. Tr. 37-39, 42-46. After a March 22, 2006 hearing, an Administrative Law Judge ("ALJ") found Lawrence not disabled. Tr. 12-18. The Appeals Council denied review on July 28, 2006,

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 5, 2006 (Docket #5).

2 - FINDINGS AND RECOMMENDATION

making the ALJ's decision final.  Tr. 5-7.  Lawrence seeks review of the ALJ's finding.

## **DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If she is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(I).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  This evaluation includes assessment of the claimant's statements regarding her impairments.  20 C.F.R. § 404.1545(a)(3).  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1520(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  20 C.F.R. §§ 404.1520(a)(4)(iv).  If the claimant can perform her past relevant work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of her

past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

Lawrence challenges the ALJ's evaluation of the evidence and his conclusion that she could perform her past relevant work at step four in the sequential proceedings. She further contends that the ALJ should have found her unable to perform any work in the national economy at step five and therefore found her disabled.

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Lawrence had not performed substantial gainful activity during the relevant period. Tr. 14. The ALJ found Lawrence's cervical sprain and history of migraine headaches "severe" at step two, but found that "no treating or examining physician has identified any criteria that would meet or equal a listing" at step three. *Id.*

The ALJ subsequently found Lawrence's "statements concerning the intensity, duration

and limiting effects of [her] symptoms not entirely credible,"(tr. 16) and evaluated Lawrence's RFC:

> The claimant has the residual functional capacity to lift/carry up to 10 pounds frequently, and 20 pounds occasionally maximum; no repetitive bending or stooping; occasional reaching overhead; occasional ladder climbing and scaffold use; difficulty sitting for long periods; needs an opportunity to change positions; and has limited tolerance for driving or turning her head repetitively; and limited tolerance for jarring.

Tr. 14-15. At step four, the ALJ found that this RFC allowed Lawrence to perform her past relevant work as a billing clerk, service department secretary, and purchasing clerk. Tr. 17. The ALJ therefore found Lawrence not disabled at any time through the date of his decision. Tr. 18.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts" from the ALJ's conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). When reviewing a credibility finding, the court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

///

**DISCUSSION**

Lawrence challenges the ALJ's RFC assessment made between steps three and four of the sequential disability analysis. She subsequently alleges that the ALJ erred at step four and should have found her disabled at step five. Lawrence specifically contends that the ALJ erroneously rejected the opinion of a treating physician, Dr. Ferguson, and improperly evaluated her credibility. Lawrence makes no other challenges to the ALJ's findings.

I.     **Medical Source Statements**

Lawrence challenges the ALJ's evaluation of her treating physician's opinion that she is unable to work. Pl. Opening Br. 17. The ALJ rejected the opinion of her treating occupational physician, Dr. Ferguson, because he found that opinion contradicted by the opinion of examining neurologist Dr. Scherman. Tr. 17.

A.     **Legal Standard**

A treating physician's opinion is generally accorded greater weight than an examining physician's opinion. *Edlund*, 253 F.3d at 1157. The ALJ must give specific, legitimate reasons supported by substantial evidence in the record for rejecting a controverted opinion from a treating physician and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of the treating physician, however, is not necessarily conclusive on the ultimate issue of disability, which is reserved for the Commissioner to decide. 20 C.F.R. § 404.1527(c)(1); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

///

///

6 - FINDINGS AND RECOMMENDATION

### B.     Discussion

#### i.     *Treating and Examining Physician Opinions*

Dr. Ferguson treated Lawrence between September 2003 and February 2004. Tr. 312-323. During this period, Dr. Ferguson assessed Lawrence with a cervical sprain, which included "a great deal of muscle spasm and pain," as well as "marked tenderness." Tr. 315-16. In December 2003 he noted, "this is as tight a musculature in the neck and upper back that I have seen." Tr. 318. In March 2004 Dr. Ferguson wrote, "see chart note" and "needs PCE [physical capacity evaluation] to determine" in response to a disability determination services[3] questionnaire regarding Lawrence's functional limitations. Tr. 312-14.

In June 2004 and January 2006, Dr. Ferguson submitted letters to Lawrence's lawyer indicating that Lawrence's cervical sprain interferes with her ability to work. Tr. 343, 373. Dr. Ferguson specifically indicated that Lawrence's pain, muscle spasm, and medication side effects preclude work activity or safe transportation to work. *Id.*

The ALJ primarily rejected Dr. Ferguson's opinion because he found it "inconsistent with other substantial evidence of record to the contrary" citing Exhibit 7F. Tr. 17. Exhibit 7F is the report of examining neurologist Dr. Scherman. Tr. 252-59.

An ALJ may only reject the opinion of a treating physician in favor of an examining physician by setting out "specific, legitimate reasons" supported by "substantial evidence." *Bayliss*, 427 F.3d 1216. Here, the ALJ cited examining physician Dr. Scherman's report without

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

7 - FINDINGS AND RECOMMENDATION

discussion. Tr. 17.

Examining physician Dr. Scherman conducted a clinical examination and review of Lawrence's medical history in February 2004. Tr. 252-59. He assessed Lawrence with "moderately severe sprain stemming from her job and some chiropractic manipulation. This is permanent and stationary . . . her condition is such that as to preclude heavy lifting, repetitive bending, and stooping." Tr. 258. He made no remarks about the side effects of any pain medication. Dr. Scherman finally stated, "It should be noted that her disability is more subjective than objective." *Id.*

The ALJ accepted Dr. Scherman's analysis of Lawrence's sprain as "moderately severe" without offering specific, legitimate reasons for rejecting Dr. Ferguson's opinion that Lawrence's sprain and resulting muscle spasm, pain, and medication side effects were severe enough to preclude work activity. This reasoning should not be sustained.

### ii.   *Lawrence's Reports to Dr. Ferguson*

The ALJ also stated that Dr. Ferguson's opinion is "given little weight as his conclusions are apparently based solely upon the claimant's self-reported allegation[s]." Tr. 17. An ALJ may reject physician reports based upon a claimant's complaints if he has found the claimant not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ failed to properly discredit Lawrence, discussed below. Therefore, this court should not accept the ALJ's reasoning for discrediting physician opinions incorporating Lawrence's subjective complaints.

### C.   **Conclusion: Medical Source Statements**

While ultimate determinations of disability are reserved for the Commissioner, the ALJ's rejection of Dr. Ferguson's opinion based upon Lawrence's credibility and the opinion of

8 - FINDINGS AND RECOMMENDATION

examining physician Dr. Scherman is not based upon proper legal standards and should, therefore, be rejected.

## II.     Credibility

### A.     Credibility Analysis

The ALJ must evaluate a claimant's credibility in order to properly consider the claimant's testimony regarding symptoms and pain. The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, including any failure to seek treatment, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

### B.     Discussion

The ALJ noted Lawrence's activities of daily living, including "getting up and taking her medication," making her husband lunch, reading, and helping to prepare dinner. The ALJ concluded,

> In summary, the undersigned finds that the claimant's subjective

9 - FINDINGS AND RECOMMENDATION

>complaints are not supported by objective medical evidence (Exhibit 7F) [Dr. Scherman's report]. She has periods of aggravation, but no long-term limits at the level she describes from any diagnosed medical condition that could cause such limitations. She tried to return to work, but said they told her not until she could work full-time. So then, she tried to return to work full-time, and they told her she had been out too long and no longer had a job. Shortly after that, she moved to Oregon with her retired husband. In the course of the move, she aggravated her neck. One would understand that in packing and moving she did more than described in the residual functional capacity. The undersigned further finds there are some elements of disincentive to return to work, such as, Worker's Compensation payments, her disappointment of being unable to return to work, and the aggravation from the move.

Tr. 17. This analysis of Lawrence's credibility fails to apply the appropriate legal standards for the reasons that follow.

### i.  *Medical Corroboration of Severity Allegations*

The ALJ may not discredit Lawrence simply because objective medical evidence does not match the symptom testimony she alleges. Once a claimant has shown an underlying impairment, as the ALJ acknowledged in his step two findings, the ALJ may not reject a claimant's symptom or pain testimony simply because the degree of alleged limitation is not corroborated by the medical record. *Smolen*, 80 F.3d at 1282. The ALJ's statement that "the claimant's subjective complaints are not supported by objective medical evidence" misapplies the relevant legal standard and is clearly erroneous.

### ii.  *Lawrence's Work History*

An ALJ may consider a claimant's work history in making a credibility decision. *Smolen*, 80 F.3d at 1284. A positive work history generally supports a positive credibility finding. *See Thomas v. Barnhart*, 278 F3d 947, 959 (9th Cir. 2002). Here, the ALJ cited Lawrence's efforts to

return to work and suggested the inverse.  Lawrence's efforts to return to work, either in a part-time of full-time capacity, do not support a negative credibility determination and the ALJ erred in making that inference.

### iii.     Lawrence's Moving Activity

The ALJ's cited Lawrence's move to Oregon and suggested that this activity "aggravated her neck" and that "she did more than described in the residual functional capacity." Tr. 17.  The ALJ should have considered Lawrence's credibility *prior* to construing his RFC.  20 C.F.R. § 404.1520(e), SSR 96-8p.  For this reason, the reference to Lawrence's moving activities does not support his credibility assessment.

### iv.     Secondary Gain

Finally, the ALJ inferred that Lawrence had a "disincentive" to return to work based upon her worker's compensation filing.  The record before this court does not contain details of Lawrence's worker's compensation case and any subsequent award.  Therefore, this court cannot review those proceedings and their possible effect upon Lawrence's willingness to return to work.  Furthermore, this court does not chastise disability applicants for secondary gain: an application for benefits, by definition, is an application for monetary compensation.  *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415, 1428 (D. Or. 1993).  The ALJ's inference that Lawrence's credibility is impugned by secondary gain is not supported by the record.

### C.     Credibility Conclusion

For the reasons above, the ALJ's credibility finding failed to apply the appropriate legal standards and should not be affirmed.

///

### III. <u>Remand</u>

The ALJ improperly rejected both a medical opinion and Lawrence's credibility. These findings are inextricably linked because the ALJ's analysis of Dr. Ferguson's opinion is predicated, in part, upon his credibility decision. After finding that the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). Improperly rejected evidence may be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178, citing *Smolen*, 80 F.3d at 1292. Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion to remand for further determinations. *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

Even if credited, the evidence discussed above does not clearly establish disability. Dr. Ferguson's notes show that Lawrence reported neck pain with associated clinical findings, as well as medication side effects, but they do not demonstrate supported physical capacity restrictions which would preclude work.

Lawrence subsequently testified that she experienced daily neck pain and headaches,

12 - FINDINGS AND RECOMMENDATION

which increased with what she called "light duty" work. Tr. 381-83, 392. Lawrence also stated that she had pain turning her head and difficulty performing some household chores. Tr. 385, 386-87. Finally, she stated that she reclines four out of six hours to relieve pain. Tr. 389. No medical provider endorsed such posture as necessary treatment. Therefore, the record does not establish that Lawrence requires an ability to recline which would preclude employment.

In sum, Dr. Ferguson's notes and Lawrence's testimony suggest vocational limitations, but do not clearly establish that her supported limitations preclude employment in the national economy at step five. Further proceedings are necessary for the ALJ to properly evaluate Dr. Ferguson's opinion, both in light of Lawrence's testimony and Dr. Scherman's report. The ALJ must also reevaluate Lawrence's credibility, reassess Lawrence's RFC accordingly, and make appropriate findings at steps four and five in the sequential proceedings.

## RECOMMENDATION

This court concludes that the Commissioner's decision that Lawrence is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards. The Commissioner's decision should be reversed and remanded for further proceedings consistent with these Findings and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 26, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 12th day of June, 2007.

                                              /s/ Paul Papak
                                              Paul Papak
                                              United States Magistrate Judge